[L. A. No. 19775. In Bank. Aug. 26, 1946.]

F. WALTER FRENCH, Petitioner, v. FRANK M. JORDAN, as Secretary of State, etc., et al., Respondents.

766

F. Walter French, in pro. per., Frank J. Indovina and J. Leroy Irwin for Petitioner.

Joseph W. Aidlin, in pro. per., and Robert W. Harrison for Real Party in Interest.

Robert W. Kenny, Attorney General, Robert O. Curran, Deputy Attorney General, Harold W. Kennedy, County Counsel (Los Angeles), and Charles C. Stanley, Jr., Deputy County Counsel, for Respondents.

SHENK, J.—This is an application for the writ of mandate to compel the secretary of state and the Registrar of Voters of Los Angeles County, respondents herein, to omit from the ballot to be used at the general election to be held on Tuesday, November 5, 1946, any reference to the office of Judge of the Superior Court, County of Los Angeles, Office No. 10. An alternative writ was issued. The matter is submitted on the petition and general demurrers thereto showing the following facts:

On November 5, 1940, the Honorable John Beardsley was elected to succeed himself as Judge of the Superior Court in and for the County of Los Angeles. The term for which he was then elected was six years, expiring in January, 1947. He was a candidate for reelection at the primary election held on June 4, 1946, the office being designated on the ballot as Office No. 10. He was opposed at that election but received a majority of all the votes cast for that office and was therefore elected for a full term commencing in January, 1947. He passed away on June 10, 1946.

It is alleged in the petition that the respondents intend to, and unless otherwise ordered by the court will, include in the offices to be filled at the ensuing general election in November

the office of Judge of the Superior Court, Los Angeles County, Office No. 10, and will place upon that ballot as a candidate the name of any qualified person who is nominated for that office pursuant to division 5, chapter 3 (§ 3000 et seq.) of the Elections Code, together with a space provided for a so-called ''write-in'' candidate.

■ The present proceeding is appropriate to the end sought. (Code Civ. Proc., § 1085; *Gage* v. *Jordan,* 23 Cal.2d 794, 800 [147 P.2d 387]; *Donham* v. *Gross,* 210 Cal. 190, 193 [290 P. 884].)

It is the position of the petitioner that by reason of Judge Beardsley's death a vacancy occurred in the office theretofore occupied by him, which vacancy may only be filled by the governor under section 8 of article VI of the state Constitution as adopted on November 2, 1926, and that the person so appointed will hold office until January 3, 1949.

The respondents contend that the current vacancy occurred at a time which will permit the nomination by petition pursuant to sections 3000 et seq. of the Elections Code, or that some person may be elected to that office by the ''write-in'' method.

■ Section 8 of article VI of the Constitution provides as follows: ''The term of office of judges of the superior courts shall be six years from and after the first Monday of January after the first day of January next succeeding their election. A vacancy in such office shall be filled at the next succeeding general State election after the first day of April next succeeding the accrual of such vacancy by the election of a judge for a full term to commence on the first Monday of January after the first day of January next succeeding his election. The Governor shall appoint a person to hold such vacant office until the commencement of such term.''

The language just quoted is plain, explicit and free from ambiguity. There is no necessity or opportunity to resort to judicial construction to ascertain its meaning. When the facts in any particular case come within its provisions it is the duty of the court to apply and enforce it. The respondents contend that circumstances were shown to justify a refusal to apply it in *Bearden* v. *Collins,* 220 Cal. 759 [32 P.2d 604], and that they likewise appear in the present case. It will appear from the following discussion that the facts here presented call for its application.

The Constitution, section 2½ of article II, by amendment

adopted November 3, 1908, gave the Legislature plenary power to enact laws relative to nominations of delegates to conventions of political parties and for the direct nomination of candidates for public office at elections to be known and designated as primary elections. Section 23 of the Direct Primary Law (Stats. 1913, p. 1404) provided that in the case of but one person to be elected to a judicial office at the November election, the name of the candidate who at the primary election received a majority of the total number of votes cast for all the candidates for such office, should be the only one for such office placed on the official ballot at the ensuing November election. Prior to 1926 the nonpartisan offices for which candidates might be elected at the primaries did not include judicial offices. Consequently situations similar to that presented in *Miller* v. *Childs,* 28 Cal.App. 478 [152 P. 972], became possible. There the question was whether the foregoing provision of the Direct Primary Law prevented the election of another by the "write-in" method. In that case Childs, who sought nomination for the office of superior judge in Del Norte County, was defeated for the nomination at the primary election of 1914. Miller, his opponent, received a majority of all the votes cast for nominees for the office at the primary, and his name was the only name printed on the ballot at the November election. But after his defeat for the nomination Childs conducted a "write-in" campaign for election to the office in November and he received the majority of the votes cast. Miller contested, but it was held that Childs was duly elected because the provision that the name of the candidate who received the majority vote at the primary should be the only one for such office "placed on the official ballot" at the ensuing November election, did not prevent another candidate's name being written in by the voters.

Probably to prevent similar results in other cases the people in November, 1926, adopted section 2¾ of article II of the Constitution providing for the inclusion of the judicial office in the nonpartisan offices for which candidates might be elected at the primary election. The pertinent portion of that section reads: "Any candidate for a judicial, school, county, township, or other nonpartisan office who at a primary election shall receive votes on a majority of all the ballots cast for candidates for the office for which such candidate seeks nomination, shall be elected to such office." In the argument to the voters it was said that the constitutional

amendment was designed to cure an injustice existing in the law which did not include the judiciary among the non-partisan candidates who could be elected at the primary election, and to put the judiciary on a parity with other non-partisan officials. There was no argument against the measure.

The method of filling vacancies in the office of judge of the superior court was changed in 1926. Prior to that time when a vacancy occurred section 6 of article VI of the Constitution (as revised in 1879) vested in the governor the power to appoint a person to hold the office until the election and qualification of a judge to fill the vacancy, the election to take place at the next succeeding general election, and the person so elected to hold office for the remainder of the unexpired term. At the general election of November, 1926, the present section 8 of article VI above quoted was adopted to replace the then existing provisions of section 6 of that article. At that election the following statement was made to the voters, with no counterargument: "The election of judges of the superior court for a 'short term,' which is sometimes for only a few weeks between election day and the following January, is done away with, and whenever a vacancy occurs prior to April first of an election year a judge will be elected at the general election to hold office for the full term of six years. If a vacancy occur after April first of an election year the time is too short to circulate petitions and satisfactorily prepare for an election at the August primary, and in such case the governor will make an appointment to fill the vacancy until the next election year."

The amendment eliminated the principal objectionable feature from the prior provision which was the election of a successor to hold office for the *remainder of the unexpired term*. This was the so-called "short term" referred to in the argument. Since then the election has been for a full six-year term instead of an unexpired term. In order, however to give the candidate sufficient time to prepare and file his nomination papers and the people sufficient time to consider a successor for a full rather than a partial or "short" term, it is also provided that the successor should not be elected at the next succeeding election if the vacancy occurred in an election year after April first.

In *Bearden* v. *Collins, supra* (220 Cal. 759), the vacancy

occurred on April 19th in an election year. Nevertheless it was there held that the election of a successor for a full six-year term should take place in the same year, which was the last year of the incumbent's term, because there was yet time in that year for the election processes to function. The result in that case is not controlling on the facts presently before the court and insofar as it is inconsistent with the conclusion herein that case is overruled.

Here a candidate to succeed the incumbent (being the incumbent himself) upon expiration of his term of office in January, 1947, was elected at the 1946 primary, and died shortly thereafter. The respondents contend that nevertheless an opportunity should be afforded to file independent nominations, and that the voters should not be deprived of their privilege to "write-in" a candidate's name at the forthcoming November election. The difficulty with their position is that as to the selection of a successor to take office upon the expiration of the incumbent's term, the elective processes have already spent their force. By the self-executing provision of section 2¾ of article II of the Constitution (see *DeWoody* v. *Belding*, 210 Cal. 461 [292 P. 265]; *Kerr* v. *Russell*, 209 Cal. 36 [285 P. 311]), a successor was elected, and there is no election for that office to go before the people in November. It is argued that the death of the incumbent following his reelection left a vacancy in each of two terms, that is, a present vacancy in the occupied term expiring in January, 1947, and a vacancy in futuro in the term to which he was elected for the six years commencing in January, 1947. Actually any "term" for which Judge Beardsley had been elected ceased to exist when he died. The vacancy in the office is a continuing one which lasts until a new six-year term shall commence in January, 1949, for a person elected at the 1948 election. The situation calls for an appointment to fill the office until the new term commences.

It follows that the respondents should be directed to omit from the ballot to be used at the forthcoming general election any mention of the office of Judge of the Superior Court, County of Los Angeles, Office No. 10.

Let the peremptory writ issue accordingly, effective immediately.

Edmonds, J., Carter, J., and Schauer, J., concurred.

SPENCE, J.—I concur in the judgment.

The result reached in the majority opinion is highly desirable as it avoids what has been termed a "hit-and-miss, slipshod, irregular election" (see *State* v. *Claussen*, 216 Iowa 1079 [250 N.W. 195]) for the important office of judge of the superior court. I deem it unfortunate, however, that the majority of this court has thought it necessary or proper to overrule in any measure the case of *Bearden* v. *Collins*, 220 Cal. 759 [32 P.2d 604]. While that case was decided by a divided court, the majority opinion there placed a workable, common-sense construction upon section 8 of article VI, based upon a reading of the entire section in the light of its history and purposes, and in the light of other sections of the Constitution, rather than a construction based upon a literal reading of a single sentence, which construction will admittedly lead to confusion and to absurd results in many cases.

As was said in *Bearden* v. *Collins, supra,* at pages 761 and 762: "Clearly, the provision does not contemplate a deferred election in a year when the general law provides for a regular election to fill the new term to begin the following year. Therefore, when a term is expiring at the close of the year of a general election, the occurring of a vacancy at any time in such year is a false quantity, except that, under the last sentence of said provision, the vacancy can be filled by the Governor, until the commencement of the new term. Moreover, in order to harmonize the first sentence of said provision and other related provisions of the Constitution with the sentence under construction, it is necessary to give it the above meaning." In other words, whenever by reason of the approaching expiration of the term of an incumbent in the following January, an election to fill the new term is scheduled to take place at the general election in any given year, that election must proceed to completion in that year regardless of any vacancy which may occur at any time in that year, whether before or after April 1, by reason of the death or resignation of the incumbent. The majority of the court there refused to rest upon a literal construction of a single sentence of section 8 of article VI of the Constitution, which construction would permit an incumbent to resign at any time after April 1 and either (1) thereby defer the pending election for two years, or perhaps longer, if the next appointee

should similarly resign two years later and after April 1, or (2) thereby nullify the results of a completed election of the successful opponent of the incumbent or nullify the results of a completed election of a successful candidate in an election in which the incumbent might not have been a candidate. The dissenting opinion in that case apparently recognized such difficulties when it there said at page 764: "If under a different state of the facts its literal enforcement would lead to an absurdity or tend to thwart the preferential right to elect, that situation may adequately be dealt with when it arrives." In other words, such literal construction admittedly cannot stand the test under all circumstances.

As I read the majority opinion in the present case, it not only expressly overrules *Bearden* v. *Collins, supra,* "insofar as it is inconsistent with the conclusion" reached, but it also contains language which seems to indicate the adoption *in toto* of the views expressed in the dissenting opinion in that case. This leaves the law in a state of confusion as election officials and candidates for the office of superior court judge will be compelled to speculate, whenever an incumbent dies or resigns after April 1 in the election year at the end of his term, as to whether a majority of this court will adhere to a literal construction of the single sentence of said section 8 of article VI or will abandon such construction because in the particular circumstances they may feel that such construction "would lead to an absurdity or tend to thwart the preferential right to elect."

In my opinion, the views expressed in the majority opinion in *Bearden* v. *Collins, supra,* are sound and there should be no departure from those views. The underlying purpose of the adoption of section 8 of article VI of the Constitution was to avoid confusion in the operation of the election processes but the majority opinion here tends to create confusion as above indicated. In the ballot argument, quoted in the majority opinion, it is said: "If a vacancy occur after April 1 of an election year, the time is too short to circulate petitions." This is not true in the election year at the end of an incumbent's term when an election is to be held in the normal course and all persons know before the beginning of that year that an election is to be held and that petitions may be circulated. The section under consideration was designed to defer an election to fill a vacancy occurring after April 1 only in those general election years in the middle of

a term of the incumbent when no election would normally be held in that year for the incumbent's office. In such years, any attempt to get the election processes into operation to fill an unexpected vacancy occurring after April 1 would almost necessarily lead to confusion and to a "hit-and-miss" election. The section was not designed, however, to disrupt the normal election processes in the general election year at the end of the term of the incumbent and thereby to deprive the electorate of the right to participate in an election at least once in each six years for the office of judge of the superior court. To adhere to a literal construction of the single sentence under consideration might deprive the electorate of that right for an indefinite period, for every normal election for the office to be held in the last year of the incumbent's term might be deferred at the will of the incumbent or by the hand of fate.

The views expressed above do not, however, lead me to the conclusion that the writ should be denied under the circumstances presented here. In the present case, unlike the Bearden case, the election had been completed at the primary with the election of Judge Beardsley for another term. The only question here is whether the death of Judge Beardsley, following his election at the primary, should be held to open the door to a "hit-and-miss" election at the general election in November of this year. In my opinion, the answer to this question should be in the negative despite the fact that I believe such conclusion necessitates the overruling, at least in part, of *DeWoody* v. *Belding,* 210 Cal. 461 [292 P. 265], which case was likewise decided by a divided court. I agree with the majority opinion in that case insofar as it holds that the candidate who was successful in obtaining a majority of all votes cast at the primary was "elected at the primaries," that such election "was in effect a final election," and that the death of the successful candidate after the primary "did not convert the primary election into a nominating election." I do not agree, however, that the subsequent death of the successful candidate rendered such election "abortive." While his subsequent death prevented him from later qualifying for the office for the new term, it did not affect the validity of his prior "final" election. There the election processes had spent their full force for that office for that year and a second "final" election should not have been held for that office at the general election of that year

but should have awaited the orderly procedure provided for the primary and general election two years later. The same situation is presented here and no second "final" election should be held for the office in question at the general election this year. I therefore believe that *DeWoody* v. *Belding, supra,* should be overruled insofar as it is inconsistent with the views above expressed.

In the present case, it should be said in justice to respondents that their opposition to the issuance of the writ was apparently fully justified by their reliance upon the majority opinions in *Bearden* v. *Collins, supra,* and *DeWoody* v. *Belding, supra.* But the result of sustaining the position of respondents would be to compel the holding of a "hit-and-miss" election in November, at which election any person obtaining a mere plurality of votes by the "write-in" method or otherwise would be elected. In my opinion, there is nothing in our election laws which requires or permits the holding of a second "final" election of this type.

In ordering the writ to issue, it appears absolutely necessary for this court to disapprove, at least in part, one or the other of the majority opinions in the above mentioned cases. The majority of this court has deemed it proper to disapprove, at least in part, the majority opinion in *Bearden* v. *Collins, supra.* It appears to me preferable to disapprove, at least in part, the majority opinion in *DeWoody* v. *Belding, supra.* While it is regrettable that the members of this court find themselves divided in their views on this important phase of the law governing elections, I feel impelled to express my views in opposition to the disapproval by the majority opinion here of the construction placed upon said section 8 of article VI by the majority opinion in *Bearden* v. *Collins, supra.* That construction is one which will in all circumstances avoid the interruption of the normal election processes by the possible occurrence of unexpected vacancies while such normal election processes are operating, and is a construction which will clearly indicate the course to be pursued by the officials charged with the duty of supervising the operation of such election processes.

TRAYNOR, J.—I dissent on the authority of *Bearden* v. *Collins,* 220 Cal. 759, 761 [32 P.2d 604], and *DeWoody* v. *Belding,* 210 Cal. 461, 464, 465 [292 P. 265]. In my opinion neither of these cases should be overruled.