[S.F. No. 23244. In Bank. Mar. 14, 1975.]

CARL WEST ANDERSON, Petitioner, v.
GEORGE W. PHILLIPS, JR., as Presiding Judge, etc., et al.,
Respondents;
EDMUND G. BROWN, JR., as Governor, etc., Intervener.

**COUNSEL**

Edwin A. Heafey, Jr., Peter W. Davis and Crosby, Heafey, Roach & May for Petitioner.

Richard J. Moore, County Counsel, and James E. Jefferis, Assistant County Counsel, for Respondents.

Thomas Schneider and Sally Laidlaw as Amici Curiae on behalf of Respondents.

Evelle J. Younger, Attorney General, Iver E. Skjeie, Assistant Attorney General, and Richard C. Creeggan, Deputy Attorney General, for Intervener.

**OPINION**

**THE COURT.**—Petitioner, having been appointed to fill a vacancy in an office of the Superior Court for the County of Alameda, seeks a writ of mandate to compel respondents, the presiding judge of the superior court and the superior court itself, to assign judicial duties to him. By leave of the court, the Governor has been permitted to intervene. (Code Civ. Proc., § 387.)

We have concluded that although petitioner may not compel that judicial duties be assigned to him, he nevertheless is entitled to require

respondent presiding judge to exercise his discretion to determine whether such assignments should be made.

The series of events culminating in the present dispute began with the decision in early 1974 by Judge Redmond Staats not to seek reelection to office. The term to which Judge Staats had been elected was to expire on January 5, 1975. At the June 4, 1974, general election, Lewis F. Sherman, then a judge of the Municipal Court for the Berkeley-Albany Judicial District, who had run unopposed, was elected to the office to be vacated by Judge Staats. His term was to commence on January 6, 1975. Judge Staats retired from office, however, on September 14, 1974. Former Governor Reagan then appointed Judge Sherman to the vacancy created by the retirement of Judge Staats. Judge Sherman took office on September 16, 1974, but retired[1] on October 31, 1974, and died on November 22, 1974.

The office from which Judge Sherman had retired remained vacant until January 4, 1975, when petitioner, whom former Governor Reagan had appointed the day before, was sworn in and duly filed his oath of office. In reliance on a December 24, 1974, opinion of the Attorney General (57 Ops. Cal. Atty. Gen. 615 (1974)), respondent presiding judge concluded that the appointment of petitioner was effective to fill the vacancy existing in the superior court office only until the expiration of the term to which the original incumbent, Judge Staats, had been elected. He has, therefore, refused since January 6, 1975, the date on which Judge Sherman's term was to commence, to assign any judicial duties to petitioner.

■  Mandate is an appropriate remedy by which to compel the exercise of discretion by a court or governmental officer. (Code Civ. Proc., § 1085; *Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 579 [114 Cal.Rptr. 106, 522 P.2d 666]; *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379].) Petitioner here seeks to compel respondent[1] to exercise the discretion conferred on him as presiding judge by Government Code section 69508,[2] to "distribute the business of the court among the judges."

---

[1]Inasmuch as the act or acts sought to be compelled are to be performed by the presiding judge, not the superior court itself, future use herein of the designation "respondent" shall be understood to refer to the presiding judge.

[2]Section 69508 provides: "The judges of each superior court having three or more judges, shall choose from their own number a presiding judge who serves as such at their pleasure. Subject to the rules of the Judicial Council, he shall distribute the business of the court among the judges, and prescribe the order of business."

Mandate does not lie to control the exercise of discretion. (*Hurtado* v. *Superior Court, supra,* 11 Cal.3d 574, 579.) Government Code section 69508 does not require that a presiding judge assign specific matters or any "business" of the court to a particular judge. Assignments of the "business" of the court among judges of the court is wholly discretionary. Mandate is, nonetheless, appropriate to compel an officer both to exercise his discretion and to exercise it under a proper interpretation of the applicable law. (See *Hollman* v. *Warren* (1948) 32 Cal.2d 351 [196 P.2d 562].) Therefore, since respondent's refusal to assign court business to petitioner is based on his determination that petitioner is not now a judge of the Alameda County Superior Court, the writ will lie if that determination is erroneous.

Both terms of superior court judges and vacancies in offices of a superior court are governed by article VI, section 16, subdivision (c), of the California Constitution, which provides: "Terms of judges of superior courts are 6 years beginning the Monday after January 1 following their election. A vacancy shall be filled by election to a full term at the next general election after the January 1 following the vacancy but the Governor shall appoint a person to fill the vacancy temporarily until the elected judge's term begins."

Petitioner contends that the language of section 16, subdivision (c), and past cases interpreting that section and its pre-1966 predecessor compel the conclusion that his appointment was effective to fill a vacancy that continues until a new election can be held in 1976 and the person then elected takes office on January 3, 1977.

Respondent and the Governor contend on the other hand that the appointment cannot extend beyond the term of the prior incumbent judge, that a new vacancy came into existence at the time the new term would have commenced, and that the new Governor, who had assumed office at that time, is entitled to fill the new vacancy by appointment. They argue that to hold otherwise would permit an appointment to a vacancy that did not yet exist in a term that had not yet commenced, even though in some cases the person elected might yet appear and claim his right to the office.

The authorities on which respondent and the Governor rely for these propositions are inapposite, however. Many of them relate to nonjudicial offices governed by other statutory or constitutional provisions, which offices are filled by election or appointment to terms whose dates of commencement and expiration are fixed by the governing law.

"Whether a public officer has a fixed term of office can be determined only by reference to the law creating the office." (*Boyd* v. *Huntington* (1932) 215 Cal. 473, 479 [11 P.2d 383].) In *Boyd* the validity and duration of a gubernatorial appointment to the Board of Dental Examiners was at issue. By examination of the act creating the board, which established rotating terms, we were able to conclude that the Legislature contemplated terms that would have fixed dates and that appointments to fill vacancies on the board were necessarily for terms that would "run with the office and not with the officer." (215 Cal. at p. 480.) Similarly, in *DeWoody* v. *Belding* (1930) 210 Cal. 461 [292 P. 265], the office at issue was not judicial, but was that of county supervisor, the term of which had fixed commencement and termination dates. In that context we held that the death of an incumbent after his reelection to a new term, but before the commencement of that term, "did not create a present vacancy in the full term of office" and that "the power of appointment would not accrue until after the commencement of the full term of office." (210 Cal. at pp. 464-465.) In *People* v. *Ward* (1895) 107 Cal. 236 [40 P. 538], the office of district attorney was in dispute. The governing statute established terms with fixed dates. The successful candidate, elected for a two-year term to commence on January 7, 1895, died on December 15, 1894, and on January 2, 1895, the board of supervisors purported to appoint the incumbent to fill the term that was to commence five days hence. Under the applicable law, the incumbent was entitled to hold office until January 7th and to continue in office "although his term has expired until his successor has qualified." (Pol. Code, § 879.) We held that no vacancy occurred during the term of the incumbent and therefore, even though a vacancy was certain to arise on January 7th, the board of supervisors lacked power "by anticipation [to] fill one, which was to arise *in futuro* during the term of [the Board's] successor." (107 Cal. at p. 242.)

One additional case cited in the Attorney General's opinion relied on by respondent, *People* v. *Waterman* (1890) 86 Cal. 27 [24 P. 807], did involve a superior court office, but there a very different question was presented. The issue to be decided was whether the term of a judge who was to fill a newly created superior court office for which an election was to be held would be a full six-year term or would expire at the same time as the term of the incumbent of the existing office. We pointed out that the election was not to fill a vacancy and thus was not governed by the vacancy provision of article VI, section 6, of the Constitution which then provided that a judge elected to fill a vacancy in a superior court office "shall hold office for the remainder of the unexpired term." In that context we use the language quoted in the Attorney General's opinion:

"No vacancy in a term can occur until a term is commenced." Not only did the governing constitutional provision differ from that here under consideration, but we were concerned with a newly created office for which no term had ever existed before. These cases do not, therefore, support the proposition that the appointment of petitioner could not extend beyond the date on which the term of the former incumbent would have expired.

■ The office of a superior court judge, unlike the nonjudicial offices at issue in the cases discussed above, is not an office having a term with fixed commencement and termination dates. Although each term begins on the first Monday following January 1 of the year after the election to fill the office, a vacancy which occurs thereafter is filled by election to a new six-year term. Thus, unlike the office of sheriff at issue in *Adams* v. *Doyle* (1903) 139 Cal. 678, 681 [73 P. 582], a vacancy in a superior court judgeship is a vacancy in an office, not a vacancy in a term. (See *Pollack* v. *Hamm* (1970) 3 Cal.3d 264 [90 Cal.Rptr. 181, 475 P.2d 213]; *Barber* v. *Blue* (1966) 65 Cal.2d 185 [52 Cal.Rptr. 865, 417 P.2d 401]; *French* v. *Jordan* (1946) 28 Cal.2d 765 [172 P.2d 46].) With these distinctions in mind we must apply article VI, section 16, subdivision (c).

■ We have noted heretofore in another context that a vacancy which occurs in a superior court office during the year in which the elected incumbent's term is to expire is a single vacancy that continues until the term of a newly elected judge begins. It is not a dual vacancy, existing first in the expiring term and arising again in the new term if no one takes office at the time it is scheduled to begin. (*French* v. *Jordan* (1946) 28 Cal.2d 765, 770 [172 P.2d 46].) Although *French* involved interpretation of article VI, section 8, the predecessor to the present constitutional provision, the adoption of the present section made no change in the rule that a vacancy in a superior court office is one that continues until an *elected* judge takes office. (*Pollack* v. *Hamm, supra,* 3 Cal.3d 264, 273.) Indeed, the only effect of the 1966 revision was to eliminate the requirement that an election be held during the last year of an incumbent's term if a vacancy accrues during that year,[3] and to assure that the appointee will not have to stand for election until the general election two years hence.

---

[3]Prior to 1966, article VI, section 8, provided: "The term of office of judges of the superior courts shall be six years from and after the first Monday of January after the first day of January next succeeding their election. A vacancy in such office shall be filled by the election of a judge for a full term at the next general state election after the first day of January next succeeding the accrual of the vacancy; except that if the term of an incumbent, elective or appointive, is expiring at the close of the year of a general state election and a vacancy accrues after the commencement of that year and prior to the

The provision which now governs, i.e., article VI, section 16, subdivision (c), was adopted in 1966 after this court had pointed out in *Barber* v. *Blue* (1965) 65 Cal.2d 185, 188-189 [52 Cal.Rptr. 865, 417 P.2d 401], that the former requirement of an election to fill a vacancy accruing in the last year of a term could apply only during the early part of the year. Since we had already held in *French* v. *Jordan, supra,* 28 Cal.2d 765, 770, that a vacancy occurring after an incumbent had been reelected but before he could assume office for his new term continued until a new election could be held and the person elected assumed his term, the obvious purport of the 1966 revision of the Constitution in this regard was to ratify that rule and to extend it to all vacancies arising during the closing year of an elected incumbent's term.[4]

█ Since article VI, section 16, subdivision (c), makes no distinction between vacancies arising before or after a scheduled election, but expressly provides that the person appointed by the Governor shall "fill the vacancy temporarily until the elected judge's term begins," and the term cannot begin until the person elected qualifies and assumes the office, it is apparent that the appointee may continue to fill the vacancy until such time as the vacancy is terminated by the assumption of office by an *elected* judge. If no one is elected; if the person elected dies before assuming office; or if the successful candidate is an incumbent who resigns, retires, or vacates the office by taking an incompatible oath, the vacancy which accrued during the former term continues until a new election is held and the newly elected judge assumes the office. The new term does not come into existence until that time. (*French* v. *Jordan, supra,* 28 Cal.2d 765, 770.) It follows that an appointee filling the vacancy may continue to hold office until the new term comes into existence, since the Constitution provides that "the Governor shall appoint a person to fill the vacancy temporarily until the elected judge's term begins."[5]

commencement of the ensuing term, the election to fill the office for the ensuing full term shall be held in the closing year of the expiring term in the same manner and with the same effect as though such vacancy had not accrued. In the event of any vacancy, the Governor shall appoint a person to hold the vacant office until the commencement of the term of the judge elected to the office as herein provided."

[4]In *Pollack* v. *Hamm, supra,* 3 Cal.3d 264, 274, we noted that had no one been elected to the superior court office there in dispute, a possibility which existed because the former appointed incumbent who was also one of two candidates for the office died before the election, the appointee who was then filling the vacancy would have continued in office until a new election was held and an elected judge assumed the office. There, too, the term of the elected incumbent was to have expired at the end of the year in which the election was held.

[5]We emphasize that our holding here applies only to vacancies in superior court offices and the rights of appointees thereto. No statutory or constitutional provision permits an elected superior court judge to continue in office until his successor qualifies.

Since Judge Sherman's death precluded the term for which he was elected from coming into existence the vacancy continues and petitioner is entitled to fill it.

Let the peremptory writ of mandate issue accordingly.

MOSK, J.—I dissent. The Attorney General, who supports the respondent herein, issued a formal opinion (57 Ops.Cal.Atty.Gen. 615 (1974)), in which he pointed out that "the Constitution limits the term of office to six years. Where the term is so prescribed, the appointing power cannot enlarge it by issuing a commission in which a greater term is named."

That statement would seem to be so inherently logical as to require no further discussion. Nevertheless my colleagues indulge in some remarkable legal legerdemain by which a terminating six-year constitutional term is miraculously extended to eight years. And with the same magic wand, *mirabile dictu,* they cause a new six-year term which appeared on the county voters' ballots in June 1974 to self-destruct. Then, to compound the havoc, the majority disapprove three Attorney General's opinions which, since 1959, have properly advised administrations of both political parties.[1]

The majority begin with a misconception: they assert "a vacancy in a superior court judgeship is a vacancy in an office, not a vacancy in a term." (*Ante,* p. 739.) Their error is immediately evident upon reading article VI, section 16, subdivision (c), of the Constitution: *"Terms* of judges of superior courts are 6 years beginning the Monday after January 1 following their election. A vacancy shall be filled by election to a full *term* at the next general election after the January 1 following the vacancy but the Governor shall appoint a person to fill the vacancy temporarily until the elected judge's *term* begins." (Italics added.) The word *term* is used three times in the two sentences of the section; the word *office* nowhere appears in the section.

Therefore we must analyze the *terms* involved, bearing in mind that no superior court term may extend beyond the six years provided in the Constitution.

There are two separate and distinct terms with which we are here concerned. The first is the term of Judge Staats, which began in January 1969 and was required to terminate on January 5, 1975. There is no event

---

[1] 57 Ops.Cal.Atty.Gen. 615 (1974); 36 Ops.Cal.Atty.Gen. 77 (1960); 33 Ops.Cal.Atty. Gen. 1 (1959).

which could possibly extend his constitutionally created six-year term beyond six years. The term was not extended beyond the constitutional limit by Judge Staats' resignation, by Judge Sherman's appointment, by Judge Sherman's resignation, by Judge Sherman's death or by this petitioner's appointment. The term could not be extended beyond six years if a new appointment were purportedly made every day up to and including January 5.

The second term involved was that for which the electorate made a democratic choice at the polls in June 1974, the actual term to begin on January 6, 1975. Nothing that occurred prior to January 6 could abolish, alter, or impose any burden whatever on the institution of the new term.

When Judge Sherman, duly elected by the people of his county in June, died and was thus unable to take his oath of office on January 6 for the new term, a vacancy occurred *in that new term.* That vacancy exists today and can now be filled temporarily by the Governor until "the next general election after the January 1 following the vacancy." That will be the general election of 1976.

The majority cite only one case which gives them any comfort, *French v. Jordan* (1946) 28 Cal.2d 765, 769 [172 P.2d 46]. The language in *French* is pure dictum, unnecessary to the opinion, since the issue there was whether the judgeship involved should be included on a November ballot after the election forces were already spent in the June primary. And if it is not dictum, the language in the opinion conflicts with the current constitutional provision. Persuasive authority to the contrary, not cited by the majority, is 36 Ops.Cal.Atty.Gen. 77 (1960).

The fallacy of the majority analysis and result is illustrated further in my dissent to the companion case, *Zecher* v. *Cory, post,* page 743 [119 Cal. Rptr. 885, 532 P.2d 1253].

I submit that the appropriate rule for this case is that no vacancy can exist in a judicial term until that term actually comes into existence, here January 6, 1975. Thus this petitioner could only complete the remaining days of Judge Staats' unexpired term. He could not be appointed to fill a vacancy which had not yet occurred in a term which was not yet in being.

I would deny the petition.